# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Philander Jenkins,

                                Plaintiff,

                                                    Civ. No. 06-3625 (RHK/AJB)
                                                    **MEMORANDUM OPINION AND
                                                    ORDER**

v.

County of Hennepin, Minnesota, *et al.,*

                                Defendants.

Jill Clark, Jill Clark, P.A., Minneapolis, Minnesota, Jill M. Waite, Waite Law Office,
Golden Valley, Minnesota, for Plaintiff.

Toni A. Beitz, Hennepin County Attorney's Office, Minneapolis, Minnesota, for
Defendants County of Hennepin, Trent Jovanovich, Michael Cuscaden, and Tim Bush.

Thomas C. Vasaly, Minnesota Attorney General's Office, St. Paul, Minnesota, for
Defendants Brian Blanch and Eric Knutson.

## INTRODUCTION

In this action, Plaintiff Philander Jenkins has sued Hennepin County, Minnesota (the

"County"); Trent Jovanovich, Michael Cuscaden, and Sergeant Tim Bush, detention deputies

who work at the County's Adult Detention Center ("ADC"); and Brian Blanch and Eric

Knutson, two Special Agents who work for the Minnesota Bureau of Criminal

Apprehension ("BCA"), alleging various deprivations of his constitutional rights and related

state-law claims.[1]  The County Defendants have moved to dismiss (or, in the alternative, for

summary judgment on) certain of Jenkins's claims; the State Defendants have moved to

dismiss Jenkins's constitutional claim and further assert that the Court should decline to

exercise supplemental jurisdiction over the lone state-law claim asserted against them.  For

the reasons set forth below, the Court will grant both Motions.[2]

## BACKGROUND

This action arises out of an alleged sexual assault that Jenkins suffered while an

inmate at the ADC.  According to the Third Amended Complaint ("TAC"), on October 4,

2003, Jenkins got into a verbal altercation with Jovanovich and Cuscaden in his jail cell.

(TAC ¶¶ 10-11.)  Jenkins then heard Jovanovich say that he was going to "teach [Jenkins] a

lesson."  (Id. ¶ 12.)  Jovanovich and Cuscaden forced Jenkins onto his stomach on the cell

floor, and his pants were pulled down.  (Id. ¶ 13.)  He "then felt something hard touching his

rectal area and attempting to penetrate him"; he believed that the object was either

Jovanovich's or Cuscaden's penis.  (Id.)  After Jenkins screamed for help, the deputies

stopped their assault.  (Id. ¶ 15.)

Jenkins claims that he reported this assault, but that ADC staff ignored his complaint

and did not take him for medical treatment.  (Id. ¶ 20.)  Eventually, another inmate called

---

[1] The County and the detention deputies are collectively referred to herein as the "County Defendants."  Special Agents Blanch and Knutson are collectively referred to herein as the "State Defendants."

[2] Having reviewed the parties' voluminous submissions, the Court concludes that oral argument on Defendants' Motions is unnecessary.

Jenkins's grandmother, who succeeded in having Jenkins's attorney visit him that night.

(Id. ¶ 22.)  Jenkins explained what had happened and showed his attorney a blood-stained

tissue, which he pulled from his buttocks.  (Id.)  Jenkins's attorney then asked Bush to be

seen by a nurse.  (Id. ¶ 23.)  Two jail nurses examined Jenkins and sent him to the Hennepin

County Medical Center for a sexual-assault forensic examination.  (Id. ¶¶ 24-25.)  While

Jenkins was at the hospital, Bush ordered a "shakedown" of Jenkins's cell, which allegedly

resulted in the loss of evidence of the sexual assault, including the bloody tissue.  (Id. ¶

26.)

 On October 9, 2003, the Hennepin County Sheriff requested that the BCA

commence an investigation into the alleged assault.  (Id. ¶ 28.)  According to Jenkins, the

subsequent BCA investigation was "not neutral," but instead was "slanted" in favor of

Jovanovich, Cuscaden, and Bush.  (Id. ¶ 31.)  Ultimately, the BCA presented the results of

its "biased" investigation to the Washington County Attorney, who declined to prosecute

any of the ADC staff members.  (Id. ¶ 35.)[3]  The BCA, however, recommended that *Jenkins*

be charged with submitting a false police report, because the "slanted" investigation

revealed evidence that Jenkins had fabricated the assault.  (Id. ¶¶ 28-30.)  Jenkins was so

charged by criminal complaint on March 29, 2004.

 Jenkins stood trial for three weeks in August and September 2004.  He alleges that

the BCA continued to engage in misconduct throughout the course of his case, including

---

[3] The investigation results were presented to the Washington County Attorney rather than the
Hennepin County Attorney due to a conflict of interest.

withholding evidence from him and making false representations to the court.  (Id. ¶¶ 36.5-37.5.)  Ultimately, he was acquitted of the charge against him.  (Id. ¶ 38.)

On September 7, 2006, Jenkins commenced the instant action.  Defendants moved to dismiss, and Jenkins filed an Amended Complaint on December 28, 2006.  After additional motions to dismiss were filed, Jenkins amended his Complaint for a second time (with leave of Court) on March 5, 2007.  Once again, Defendants moved to dismiss, and Jenkins filed the TAC (with leave of Court) on June 1, 2007; the TAC is the operative Complaint before the Court.  In the TAC, Jenkins asserts the following causes of action: Count I – violation of Jenkins's constitutional rights (including substantive due process, equal protection, and First- and Fourth-Amendment guarantees); Count II – assault; Count III – battery; and Count IV – malicious prosecution.

Defendants now move to dismiss portions of the TAC.

## STANDARD OF DECISION

For the last half-century, the standard to be applied by a federal court when ruling on a motion to dismiss was well settled.  That standard, set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), mandated that a motion to dismiss be denied "unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief."  Two months ago, however, the Supreme Court altered the legal landscape for evaluating motions to dismiss.

In Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), the Supreme Court "retired" Conley's "no set of facts" language as "an incomplete, negative gloss on an

accepted pleading standard: *once a claim has been stated adequately*, it may be supported

by showing any set of facts consistent with the allegations in the complaint." (emphasis

added).  Id. at 1969.  In order to "adequately state" a claim under Twombly, a plaintiff must

plead facts sufficient to "raise a right to relief above the speculative level."  Id. at 1965.

Stated differently, a complaint must include "enough facts to state a claim to relief that is

plausible on its face."  Id. at 1974.  While Rule 8 of the Federal Rules of Civil Procedure

does not require the pleading of "detailed factual allegations," a plaintiff nevertheless must

plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which]

requires more than labels and conclusions, and [for which] a formulaic recitation of the

elements of a cause of action will not do."  Id. at 1964-65 (citation omitted).  Post-

Twombly, therefore, a complaint cannot simply "le[ave] open the possibility that a plaintiff

might later establish some 'set of undisclosed facts' to support recovery."  Id. at 1968

(citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge

the[] claims across the line from conceivable to plausible."  Id. at 1974.

 Under Twombly, as under Conley, when a court reviews a motion to dismiss, the

complaint must be liberally construed, assuming the facts alleged therein as true and

drawing all reasonable inferences from those facts in the plaintiff's favor.  Id. at 1964-65.

A complaint should not be dismissed simply because the court is doubtful that the plaintiff

will be able to prove all of the factual allegations contained therein.  Id.  Accordingly, a

well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery

is very remote and unlikely.'"  Id. at 1965 (citation omitted).

It is through this newly focused lens that the Court must evaluate Defendants' Motions.[4]

## ANALYSIS

At the outset, the Court notes that despite several rounds of briefing and the opportunity – at the behest of the Court – to clarify the precise factual and legal bases for the relief Jenkins seeks, the claims alleged in the TAC are, charitably speaking, extremely unclear. Indeed, the contentions therein are vague, ambiguous, and, at times, contradictory and nearly incomprehensible. Despite the lack of clarity in the TAC, the Court has diligently endeavored to construe the claims therein liberally, as it must when deciding a motion to dismiss.

## I.      The State Defendants

The State Defendants have been named only in Count I (constitutional claims under 42 U.S.C. § 1983) and Count IV (malicious prosecution) of the TAC. They argue that (1) Count I should be dismissed because it fails to state a viable claim against them and (2) the Court should decline to exercise supplemental jurisdiction over Count IV. The Court agrees with both arguments.

### A.      Count I fails.

In his constitutional claim, Jenkins asserts that the State Defendants committed two

---

[4] Because the Supreme Court decided <u>Twombly</u> while the instant Motions were being briefed, the Court directed the parties to submit supplemental memoranda addressing <u>Twombly</u>'s impact on the present Motions.

constitutional violations:  malicious prosecution and deprivation of procedural due process.

(TAC ¶ 42(c)-(d).)[5]  Neither claim passes muster.

### 1.      The malicious-prosecution claim[6]

Section 1983 provides a remedy only for violations of rights secured by the

Constitution or federal law.  E.g., Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th

Cir. 2000).  By itself, a malicious-prosecution claim is not actionable under Section 1983

because it fails to entail any constitutional injury.  Id.  Accordingly, in order to be

cognizable under Section 1983, a plaintiff asserting a malicious-prosecution claim must

demonstrate that the defendant's conduct also infringed upon some constitutional

protection.  Gunderson v. Schlueter, 904 F.2d 407, 409 (8th Cir. 1990).  Here, Jenkins

asserts his malicious-prosecution claim in conjunction with the alleged infringement of his

rights to due process, equal protection, and First and Fourth Amendment guarantees.  (See

Pl. July 17, 2007 Mem. (Doc. No. 116) at 8-10.)

### a.      Due process

Jenkins first alleges that the malicious prosecution instigated by the State

Defendants impaired his due-process rights.  However, the TAC does not specify whether

---

[5] Jenkins also alleges that he was subjected to excessive force and that his substantive-due-process rights were violated.  (TAC ¶ 42(a)-(b).)  Although it appears from the TAC that Jenkins also asserts these claims against the State Defendants, Jenkins clarified in a supplemental memorandum that he is asserting those claims only against Defendants Jovanovich and Cuscaden.  (See Pl. July 17, 2007 Mem. (Doc. No. 116) at 2-3, 5.)

[6] The reader is reminded that this claim is distinct from Jenkins's *state-law* malicious-prosecution claim (Count IV).

the State Defendants' alleged misconduct violated Jenkins's *substantive*-due-process

rights or his *procedural*-due-process rights.  In either case, however, the claim fails.

To the extent that Jenkins asserts a substantive-due-process violation to support his

malicious-prosecution claim, his claim cannot stand.  In Albright v. Oliver, the Supreme

Court held that substantive due process cannot provide the basis for a Section 1983

malicious-prosecution claim.  510 U.S. 266, 271 n.4 (1994) (noting that substantive due

process "may not furnish the constitutional peg on which to hang [the] tort" of malicious

prosecution).

Insofar as Jenkins predicates his malicious-prosecution claim on a procedural-due-

process violation, his claim also fails.  To establish a procedural-due-process violation, a

plaintiff must show (1) a protected liberty or property interest and (2) deprivation of that

interest without sufficient process.  E.g., Clark v. Kansas City Mo. Sch. Dist., 375 F.3d

698, 701 (8th Cir. 2004).  While the precise contours of his claim are not clear, Jenkins

appears to assert that his procedural-due-process rights were violated when he was "falsely"

accused of a crime following a "biased" investigation.  (See Pl. July 17, 2007 Mem. (Doc.

No. 116) at 5, 9.)[7]  Yet, there is no due-process right to be free from baseless prosecution.

See Albright, 510 U.S. at 282 (Kennedy, J., concurring).  Indeed, the Constitution does not

guarantee that criminal charges will only be filed against the guilty.  Sanders v. Sears,

---

[7] To the extent this claim is predicated on the State Defendants' alleged failure to disclose exculpatory evidence during Jenkins's criminal trial, the claim also fails.  (See infra at 16-17.)

Roebuck & Co., 984 F.2d 972, 997 n.6 (8th Cir. 1993).  Were that the case, Section 1983

would provide a cause of action for every defendant ultimately acquitted.  Baker v.

McCollan, 443 U.S. 137, 145 (1979).  Accordingly, Jenkins has failed to allege a

cognizable procedural-due-process claim.[8]

### b.    Fourth Amendment

Jenkins also contends that he has adequately pleaded a Fourth-Amendment violation

because he was "falsely" accused of a crime and, as a result, he was unconstitutionally

"seized," subject to bail, and compelled to make court appearances.  (See Pl. July 17, 2007

Mem. (Doc. No. 116) at 8.)  These contentions do not withstand scrutiny, because Jenkins

cannot show any unconstitutional "seizure" resulting from the "false" criminal charge.

There is no dispute that Jenkins was already being housed in the ADC on an

unrelated matter when he was charged with filing a false report.  Hence, that charge did not

result in Jenkins's arrest or any independent detention.  Moreover, the TAC does not allege

that the criminal case resulted in Jenkins being held in custody longer than he otherwise

would have been; indeed, Jenkins nowhere even intimates that he would have been released

from custody but for the criminal charge.  In addition, the Eighth Circuit has expressly held

---

[8] In Albright, the Supreme Court recognized that there might be a *Fourth-Amendment* right to
be free from baseless prosecution.  510 U.S. at 274-75.  It is not clear whether Jenkins has asserted
such a claim here.  Regardless, such a claim would fail because there has been no Fourth-Amendment
"seizure" in this case.  (See infra at 9-10.)  And, Jenkins cannot make out a Fourth-Amendment claim
based solely on his alleged *prosecution* (rather than *arrest*) without probable cause, because the
Constitution does not entitle an accused to "judicial oversight or review of the decision to prosecute."
Albright, 510 U.S. at 274 (quoting Gerstein v. Pugh, 420 U.S. 103, 119 (1975)).

that bail requirements and mandatory court appearances do not constitute "seizures" of

Fourth-Amendment dimensions.  See Technical Ordinance, Inc. v. United States, 244 F.3d

641, 650-51 (8th Cir. 2001).  Accordingly, none of the consequences flowing from

Jenkins's "false" prosecution is tantamount to an unconstitutional seizure and, hence,

Jenkins has failed to state a cognizable Fourth-Amendment violation upon which to ground

his malicious-prosecution claim.

**c.**      **Equal protection**

Jenkins next attempts to predicate his malicious-prosecution claim on an equal-

protection violation, alleging that the State Defendants intentionally, and without a rational

basis, subjected him to differential treatment.  In a class-of-one equal-protection claim,[9] a

plaintiff must demonstrate that he has been "intentionally treated differently from others

similarly situated, and that there is no rational basis for the difference in treatment."

Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  As this standard suggests,

identifying the disparity in treatment is "especially important" in class-of-one cases.

Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005).

Here, while the TAC contains a conclusory allegation of discriminatory treatment

(see TAC ¶ 42(c) & n.1), there are no facts pleaded therein supporting that allegation.

Indeed, Jenkins nowhere alleges facts indicating that other detainees "who complain[ed] of

---

[9] Jenkins has asserted a "class-of-one" claim because he has nowhere alleged differential treatment based on his membership in a protected class or group, such as race or religion.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

a crime committed by law enforcement" were treated differently than he was, or that such individuals even exist – notably, Jenkins has failed to identify even one "similarly situated" individual.  See, e.g., DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002) ("the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal"); Williams v. Prudden, 67 Fed. Appx. 976, 977, 2003 WL 21135681, at *1 (8th Cir. May 19, 2003) (unpublished) (affirming dismissal of equal-protection claim where plaintiff "did not allege any facts to show" equal-protection violation).

Moreover, even if Jenkins *had* pleaded facts indicating that other similarly situated individuals existed and were treated differently, he has nowhere alleged the lack of a rational basis for the difference in that treatment.[10]   Without identifying a disparity in treatment from others similarly situated, Jenkins has not stated a cognizable equal-protection violation to support his malicious-prosecution claim.

Finally, the Court notes that Jenkins appears to direct this claim only against Jovanovich, Cuscaden, and Bush:  he alleges that these Defendants fabricated incident reports and conducted the investigation into the alleged sexual assault with the purpose of framing him for falsely reporting a crime.  (See Pl. July 17, 2007 Mem. (Doc. No. 116) at 9.)  None of these allegations, however, implicates the *State Defendants*.  Nor do the

---

[10] The State Defendants argue that they had a rational basis for treating Jenkins differently from others who complained of crimes by police officers because they had evidence that Jenkins had falsely reported the alleged assault.  However, the Court need not consider that argument, because Jenkins has failed to even *allege* the lack of a rational basis for the purportedly disparate treatment.

allegations in the TAC provide any basis for inferring any purposeful discrimination on behalf of the State Defendants.

Jenkins appears to recognize this defect in his claim, because in his Opposition he alleges that the State Defendants acted "in concert" with Jovanovich, Cuscaden, and Bush, who allegedly had a discriminatory motive.  (Pl. Mem. in Opp'n to County Def. Mtn. at 11.) Yet, an allegation that the Defendants acted "in concert" – in other words, that they conspired with one another – must be pleaded with specificity.  E.g., Manis v. Sterling, 862 F.2d 679, 681 (8th Cir. 1988); Marlin v. Raper, No. 2:06CV0004, 2007 WL 779710, at *6 (E.D. Ark. Mar. 13, 2007).[11]  Here, despite his allegation to the contrary, Jenkins has not pleaded the "who, what, where, and how" of the alleged conspiracy between the State Defendants and the individual County Defendants.  (Pl. July 24, 2007 Mem. (Doc. No. 120) at 2.)  He has simply asserted that "[a]fter . . . notification [of Jenkins's intent to sue], and after discussions with the [Hennepin County] Sheriff's office, the BCA decided to become the criminal complainant . . . to prevent this civil lawsuit and . . . to protect the jailers from liability."  (TAC ¶ 36.)

For all of these reasons, Jenkins has failed to adequately allege an equal-protection violation supporting his malicious-prosecution claim against the State Defendants.

### d.    First Amendment

---

[11] Jenkins argues that he has nowhere alleged a "conspiracy" and that the State Defendants use that term only to liken this case to Twombly, which involved allegations of an antitrust conspiracy.  In the Court's view, however, an assertion that the State Defendants acted "in concert" with others is tantamount to alleging that the Defendants conspired with one another.

Finally, Jenkins also attempts to base his malicious-prosecution claim on an alleged violation of his First-Amendment rights.  Although, yet again, his claim is somewhat unclear, the crux of Jenkins's claim appears to be that the criminal case was brought against him in retaliation for complaining about the sexual assault.

As a general matter, the First Amendment prohibits government officials from "subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  Hartman v. Moore, 547 U.S. 250, 250 (2006).  To prevail in an action for First-Amendment retaliation, a plaintiff must show that (1) the official's adverse action was motivated in part by the exercise of a constitutional right and (2) the adverse action caused him to suffer an injury that would "chill a person of ordinary firmness" from continuing in the activity.  Williams v. City of Carl Junction, Mo., 480 F.3d 871, 877-78 (8th Cir. 2007). Additionally, a plaintiff must demonstrate a "causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury."  Moore, 547 U.S. at 250.  Here, it is unclear whether Jenkins is alleging that the State Defendants themselves possessed a retaliatory motive, or whether they merely acted in concert with those who did.[12]  That lack of clarity is immaterial, however, because the claim fails in either case.

To the extent that Jenkins contends the State Defendants themselves sought to

---

[12] In the TAC, Jenkins seems to suggest that the State Defendants personally harbored some retaliatory animus that impelled them to conduct a biased investigation and to file charges against him. In his Memorandum in Opposition, however, Jenkins asserts that the State Defendants merely "acted in concert with others who had a motive to retaliate," presumably referring to Jovanovich, Cuscaden, and/or Bush.  (Mem. in Opp'n to State Def. Mtn. at 11.)

retaliate against him, his claim fails because the TAC does not allege any facts suggesting

*why* the State Defendants would have harbored such a retaliatory animus.  For example,

there is nothing pleaded in the TAC indicating that the State Defendants knew any of the

County Defendants and, therefore, sought to protect them.[13]  Jenkins cannot simply allege,

in conclusory fashion, that the State Defendants sought to retaliate against him, in the hope

of later uncovering some unknown – and un-alleged – facts to support that conclusory

assertion.  Rather, he was required to allege in the TAC sufficient facts to render

"plausible" his claim that the State Defendants intended to retaliate.  Twombly, 127 S. Ct. at

1974.  Nothing in the TAC provides any plausible explanation for why the State Defendants

would have sought to shield Jovanovich, Cuscaden, and Bush from liability or cater to these

individuals' wishes; the TAC is utterly devoid of facts supporting any such inference.

        To the extent Jenkins alleges that the State Defendants acted "in concert" with other

individuals having a retaliatory animus, Jenkins's claim founders for the same reason as his

equal-protection claim:  he has not pleaded specific facts to support that assertion.  (See

supra at 10-13.)  At its most robust, the TAC alleges that the State Defendants instituted the

"false" criminal charge after consulting with the Hennepin County Sheriff's Office and

after Jenkins requested the retention of evidence for a lawsuit.  (See id; TAC ¶ 36.)  In the

Court's view, this is insufficient to adequately plead a conspiracy between the State

Defendants and the individual County Defendants, and does not provide any reasonable

---

[13] In fact, the State Defendants, as law-enforcement officers, presumably have an interest in rooting out unlawful activity at the ADC, which, of course, is antithetical to Jenkins's claim.

14

basis for inferring that Jenkins's criminal prosecution was initiated in response to Jenkins's prospective lawsuit.  The First-Amendment retaliation claim, therefore, cannot serve as the basis for a malicious-prosecution claim.

For all of these reasons, Jenkins has failed to adequately allege the infringement of a constitutional right upon which to base his malicious-prosecution claim.  See Gunderson, 904 F.2d at 409.  Accordingly, that claim will be dismissed.

### 2. Jenkins has failed to adequately allege a procedural-due-process violation.

In addition to alleging a procedural-due-process violation under the rubric of malicious prosecution, Jenkins also asserts a freestanding procedural-due-process claim against the State Defendants; he bases that claim on two distinct theories.  First, Jenkins alleges that the State Defendants' biased investigation led to his prosecution without probable cause.  (TAC ¶ 42(d).)  Second, he claims that he was deprived of his right to a fair trial due to the State Defendants' failure to preserve and/or disclose exculpatory evidence. (Id.)  The Court finds that neither theory survives the State Defendants' Motion.

First, as noted above (see supra at 8-9), there is no due-process right to be free from baseless prosecution, Oliver, 510 U.S. at 282-83, because the Constitution does not guarantee that criminal charges will only be filed against the guilty, Sanders, 984 F.2d at 997 n.6.  Hence, Jenkins's claim that the "biased" investigation resulted in his baseless prosecution fails to state a cognizable claim.

The alleged deprivation of Jenkins's right to a fair trial also fails to adequately state

a claim.  Jenkins alleges that the State Defendants violated <u>Brady v. Maryland</u>, 373 U.S. 83

(1963), because in his criminal trial they failed to turn over evidence tending to exculpate

him.  It is true that the failure to turn over evidence to an accused may constitute a due-

process violation when the evidence "is material either to guilt or innocence."  <u>Id.</u> at 87.

Evidence is material for <u>Brady</u> purposes, however, "only if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  Stated

differently, a <u>Brady</u> violation requires a nondisclosure "so serious that there is a reasonable

probability that the . . . evidence would have" changed the outcome of the criminal trial.

<u>Strickler v. Greene</u>, 527 U.S. 263, 281 (1999).

Here, there cannot have been a <u>Brady</u> violation *ipso facto*, because Jenkins was

acquitted of the charge against him.  In other words, the result of the criminal case would

not (and could not) have been different had the allegedly exculpatory evidence been

disclosed.  Jenkins appears to concede as much in his Motion papers; the State Defendants

raised this very argument, but Jenkins has nowhere responded thereto.

For all of these reasons, Jenkins's constitutional claim against the State Defendants

fails and will be dismissed.

> **B.      The Court declines to exercise supplemental jurisdiction over the
> state-law malicious-prosecution claim against the State Defendants.**

Having dismissed the lone federal claim asserted against the State Defendants, the

Court must decide whether to exercise supplemental jurisdiction over the only other claim

asserted against those Defendants:  the state-law malicious-prosecution claim (Count IV).

The Court concludes that the appropriate course of action is to decline to exercise

supplemental jurisdiction and dismiss that claim without prejudice.

When a district court dismisses a claim over which it has original jurisdiction, it

may decline to exercise supplemental jurisdiction over state-law claims that are related to

that federal claim.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>ACLU v. City of Florissant</u>, 186 F.3d

1095, 1098-99 (8th Cir. 1999).  Here, the only federal claim asserted against the State

Defendants – the constitutional claim in Count I – has been dismissed.  Accordingly, were

the Court to decline to exercise supplemental jurisdiction over the malicious-prosecution

claim, this litigation would be streamlined because, as a result, the State Defendants would

have been dismissed from this lawsuit in its entirety.  Moreover, for the reasons set forth

below, the Court believes that the malicious-prosecution claim against the *County*

*Defendants* should be dismissed.  (<u>See</u> <u>infra</u> at 24-26.)  Thus, no claim similar to the

malicious-prosecution claim against the State Defendants remains in this lawsuit.

Exercising supplemental jurisdiction over the claim, therefore, would result in the Court

rendering a "needless decision[] of state law."  <u>City of Florissant</u>, 186 F.3d at 1099.

**II.     The County Defendants**

     **A.     The assault and battery claims (Counts II and III) must be dismissed.**

The County Defendants first argue that Jenkins's assault and battery claims are time

barred.  (County Def. Mem. at 5-11.)  There is no dispute that the relevant limitations

period for these claims is two years.  See Minn. Stat. § 541.07(1).[14]  Nor is there any

dispute that Jenkins commenced this action beyond the statute of limitations.  Instead,

Jenkins attempts to invoke the doctrines of fraudulent concealment and/or equitable

estoppel to toll the limitations period.  (TAC ¶¶ 48, 53; see also Mem. in Opp'n to County

Def. Mtn. at 5-11.)  His attempt fails.[15]

### 1.       Fraudulent concealment

The doctrine of fraudulent concealment protects a plaintiff by tolling the statute of

limitations where the defendant concealed "the very existence of the facts which establish

the cause of action."  Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 877

(8th Cir. 2000) (applying Minnesota law).  There is no allegation here that the County

Defendants in any way concealed the facts giving rise to Jenkins's assault and battery

---

[14] Because Jenkins's assault and battery claims are before the Court by virtue of supplemental jurisdiction, it must apply Minnesota's statute of limitations to those claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting that federal court is "bound to apply state law" to claims over which it exercises supplemental jurisdiction).

[15] Jenkins also argues that the statute of limitations was not violated because the County Defendants have been on notice of his claims since October 2003.  (Mem. in Opp'n to County Def. Mtn. at 5-11 ("Notice is the only thing that a statute of limitations was intended to provide.").)  This argument is meritless.  The Minnesota statute of limitations requires an action to be *commenced* within the prescribed time period, not that a defendant merely have knowledge that a potential claim might exist.  See Sieg v. Karnes, 693 F.2d 803, 807 (8th Cir. 1982) (attempted service of summons and complaint put defendant on notice of lawsuit, but statute of limitations nevertheless expired because attempted service was invalid and, hence, action was not properly "commenced" within limitations period).  Moreover, statutes of limitations are not intended simply to provide notice to defendants; rather, there are several other policy reasons for such statutes, including "discourag[ing] fraud and endless litigation and prevent[ing] a party from delaying an action until papers are lost, facts forgotten, or witnesses dead."  Karels v. Am. Family Mut. Ins. Co., 371 N.W.2d 617, 619 (Minn. Ct. App. 1985) (citing Bachertz v. Hayes-Lucas Lumber Co., 275 N.W. 694, 697 (Minn. 1937)).

claims.  Indeed, such an allegation would be contrary to the very nature of those claims,

which involve a direct physical attack (or the threat thereof) by one person against another.

Instead, Jenkins asserts that Jovanovich and Cuscaden falsely accused him of a crime

"for the purpose of interfering with his civil suit.  This was fraudulent, and as a legal and

practical matter prevented Jenkins from bringing this case until after he was acquitted in the

criminal case."  (Mem. in Opp'n to County Def. Mtn. at 9.)  Although this sounds more like

an argument for equitable estoppel (which Jenkins also argues and which is addressed

below), Jenkins devotes six pages of his Memorandum to arguing that this conduct supports

the application of fraudulent-concealment tolling.  He relies on Heck v. Humphrey, 512

U.S. 477 (1994), to assert that he was precluded from bringing either an assault or a battery

claim until after the "false" criminal case was resolved.  (Mem. in Opp'n to County Def.

Mtn. at 9.)  However, Jenkins misapprehends Heck's holding.

In Heck, the Supreme Court held that a civil-rights action under Section 1983 is not

the appropriate vehicle for challenging the validity of a state-court criminal judgment.

Instead, the Court ruled that a Section-1983 plaintiff seeking damages for an

unconstitutional conviction must show that the conviction was reversed on appeal,

expunged, or invalidated.  Otherwise, the civil action necessarily calls into question the

validity of the conviction and is barred.  See Heck, 512 U.S. at 486-87, 490.

Under Heck, the "fabricated" criminal charge at issue here presented no legal hurdle

to Jenkins's assault and battery claims, for two reasons.  First, both of these claims arise

under state law and not under Section 1983; Heck's "bar," however, applies only to Section-

1983 claims.[16]  Second, <u>Heck</u> applies only *after* an individual has been convicted in a

criminal case.  Here, Jenkins was never convicted of making a false statement to police.

Hence, the <u>Heck</u> bar is inapplicable and could not have precluded Jenkins from suing for

assault and battery while his criminal case was pending.

 Jenkins also appears to argue that the names of the officers who committed the

assault were fraudulently concealed from him, although that argument is buried in an

affidavit submitted by Jenkins's counsel in opposition to the County Defendants' Motion.

(<u>See</u> Clark Aff. (Doc. No. 104) ¶ 8.)  Of course, affidavits – which are not properly before

the Court on a motion to dismiss – are not the appropriate place for legal arguments.  <u>See</u>

<u>In re Hartford Sales Practices Litig.</u>, 192 F.R.D. 592, 597 (D. Minn. 1999) (Kyle, J.).

---

[16] As the County Defendants pointed out in their opening Memorandum, some states have adopted and applied <u>Heck</u> to claims arising under state law.  Jenkins has cited no Minnesota cases having done so, and the Court is unaware of any.  <u>See</u> <u>Hawks v. Lake Minnetonka Conserv. Dist.</u>, No. C6-98-1608, 1999 WL 138731, at *5 (Minn. Ct. App. Mar. 16, 1999) (discussing limitation of <u>Heck</u>'s holding to Section 1983 claims).

 Jenkins *has* cited several cases in which state-law claims purportedly were dismissed under <u>Heck</u>.  (<u>See</u> Mem. in Opp'n to County Def. Mtn. at 8.)  For example, Jenkins characterizes the holding in <u>Marable v. West Pottsgrove Township</u>, 176 Fed. Appx. 275 (3d Cir. 2006), as follows:  "state tort of false arrest and malicious prosecution dismissed under <u>Heck v. Humphrey</u> analysis."  <u>Marable</u>, however, did not involve *state-law* malicious prosecution and false-arrest claims, but rather dealt with such claims under Section 1983.  Nor did any of the other cases Jenkins (mis-)cites dismiss state-law claims under <u>Heck</u>.  <u>See</u> <u>Campbell v. Kelly</u>, No. Civ. A. 02-6814, 2003 WL 21660024, at *4 (E.D. Pa. July 14, 2003) (declining to exercise supplemental jurisdiction over state-law claims because federal claims had been dismissed); <u>Holder v. Ivanjack</u>, 93 F. Supp. 2d 933, 939-40 (N.D. Ill. 2000) (dismissing assault and battery claims due to collateral estoppel, not <u>Heck</u> bar); <u>Santiago v. Marquez</u>, No. 97 C 2775, 1998 WL 160878, at *2 (N.D. Ill. Mar. 31, 1998) (*refusing* to dismiss Section 1983 claim alleging false arrest, false imprisonment, and excessive force under <u>Heck</u>).  Simply put, Jenkins's Memoranda are replete with citations to cases that do not stand for the propositions for which they are cited.

Regardless, even if the identity of Jenkins's assailants had somehow been concealed from him, he still could have sued the assailants as "John Doe" defendants, as he has done with other Defendants in this case. See Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990) ("A party need not know the details of the evidence establishing a cause of action, only that the cause of action exists."). Accordingly, this alleged "concealment" cannot have impeded Jenkins from filing this lawsuit.

The doctrine of fraudulent concealment, therefore, does not aid Jenkins's cause.

### 2. Equitable estoppel

Jenkins's argument that the statute of limitations should be tolled by equitable estoppel fares no better. That doctrine permits tolling of the limitations period when the plaintiff "show[s] representations made by one party that the other has reasonably relied on to his detriment." Hoffman v. Van Hook, No. A06-1213, 2007 WL 1053816, at *5 (Minn. Ct. App. Apr. 10, 2007). Here, Jenkins has nowhere alleged that the County Defendants made misrepresentations that caused him to delay filing his claims. Moreover, even assuming (as Jenkins alleges) that the County Defendants "falsely" accused him of a crime solely to "prevent" him from filing this lawsuit, he has nowhere alleged how the criminal case "prevented" him from doing so. Indeed, there is nothing inherent in the nature of being charged with a crime that would prevent an individual from commencing a lawsuit; as court dockets around the country make abundantly clear, persons accused of crimes, as well as those already convicted and incarcerated, file lawsuits on a daily basis. Jenkins has articulated no reason why he is any different.

Furthermore, the alleged assault in this case occurred on October 4, 2003, and the criminal case against Jenkins was commenced by criminal complaint filed March 29, 2004. (See Beitz Aff. (Doc. No. 96) Ex. 5.)[17]  Even if the Court were to assume that the criminal case impeded Jenkins from filing this lawsuit, he has nowhere explained how, or why, he was unable to commence this action in the five months between the alleged assault (October 4, 2003) and the day the criminal case was initiated (March 29, 2004).  His lack of diligence in bringing his claim militates against the application of equitable estoppel. See generally Hydra-Mac, 450 N.W.2d at 919-20 (equitable estoppel requires exercise of diligence by party seeking to toll statute of limitations).

For these reasons, Jenkins cannot avail himself of the doctrines of fraudulent concealment and equitable estoppel in order to toll the statute of limitations for his assault and battery claims.  Accordingly, these claims are barred by Minnesota's two-year statute of limitations, and they must be dismissed.

**B.      The state-law malicious-prosecution claim (Count IV) fails.**

Jovanovich and Cuscaden next argue that Jenkins has not successfully pleaded a malicious-prosecution claim against them.[18]  Under Minnesota law, the elements of a claim

---

[17] The Court may consider the criminal complaint when ruling on the County Defendants' Motion to Dismiss because it is incorporated by reference in paragraph 36.5 of the TAC.  See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (court may consider matters incorporated by reference into complaint when ruling on motion to dismiss).

[18] Neither Bush nor the County is named as a defendant in the malicious-prosecution claim.

for malicious prosecution are (1) the defendant's initiation of criminal proceedings against the accused party without probable cause, (2) malice, and (3) termination of the proceedings in favor of the accused party.  E.g., Jones v. City of Minneapolis, Civ. No. 04-4856, 2005 WL 612920, at *3 (D. Minn. Mar. 11, 2005) (Frank, J.) (citations omitted); Morgan v. McLaughlin, 188 N.W.2d 829, 831 (Minn. 1971) (noting that the "gist" of a malicious-prosecution claim is "the malicious instigation of a prosecution without probable cause").  Jovanovich and Cuscaden argue that Jenkins has failed to adequately allege facts satisfying the first (initiating prosecution without probable cause) and second (malice) essential elements.  Because the Court agrees that Jenkins cannot show that these Defendants were responsible for "initiating" the criminal case against him, it need not reach their arguments concerning malice.[19]

The facts pleaded in the TAC make clear that Jovanovich and Cuscaden were not involved in Jenkins's prosecution, but instead were merely witnesses to and/or participants in the conduct that, according to Jenkins, constituted the alleged assault.  Indeed, the TAC specifically alleges that, "after discussions with the Sheriff's office, the BCA decided to become the criminal complainant in [the] state criminal action against Jenkins."  (TAC ¶ 36.)  There are simply no facts pleaded in the TAC indicating that Jovanovich, Cuscaden, or any other ADC personnel were somehow involved in the decision to initiate the criminal

---

[19] Jovanovich and Cuscaden also argue that probable cause existed to prosecute Jenkins, but the Court need not (and does not) reach that argument.

case.  This fact scuttles the malicious-prosecution claim.  See Jones, 2005 WL 612920, at

*3 (dismissing malicious-prosecution claim because complaint did not "allege that [the

defendant] was involved in the Minneapolis Police Department's decision to initiate

criminal proceedings against Jones"); Morgan, 188 N.W.2d at 831-32 (malicious-

prosecution claim against police officers failed where officers were only "passively"

involved in procurement of search warrant that led to plaintiff's arrest); see also Stead-

Bowers v. Langley, 636 N.W.2d 334, 339-41 (Minn. Ct. App. 2002) (holding that

malicious prosecution "require[s] the initiation of an action more formal than a criminal

investigation," and that simply providing information to police officers during an

investigation is insufficient to create liability).[20]

Moreover, Jenkins was not "prosecuted" by the BCA, but rather by the St. Paul City

Attorney's Office.  (TAC ¶ 37.5.)  Generally speaking, the decision to prosecute an

individual rests solely with the prosecutor.  See, e.g., United States v. Armstrong, 517 U.S.

456, 464 (1996) (citation omitted); State v. Herme, 298 N.W.2d 454, 455 (Minn. 1980).

The TAC nowhere alleges facts suggesting that the prosecutor here was "controlled by"

Jovanovich or Cuscaden or that the prosecutor somehow failed to independently exercise

---

[20] Jenkins cites several cases for the proposition that a malicious-prosecution claim may lie
against a witness or other person who "continues to press" a prosecution that has already been
commenced.  (See Mem. in Opp'n to County Def. Mtn. at 17-18.)  However, none of those cases
dealt with a malicious-prosecution claim under *Minnesota law*; rather, each concerned malicious
prosecution as a constitutional tort under Section 1983.  In Minnesota, an allegation that a third-party
has "encourag[ed] continuation" of a criminal prosecution is insufficient.  Ellis v. City of Minneapolis,
No. C3-90-1192, 1991 WL 505, at *2 (Minn. Ct. App. Jan. 8, 1991).

his discretion when opting to charge Jenkins with submitting a false report.  See Dunham v.

Roer, 708 N.W.2d 552, 570 (Minn. Ct. App. 2006) (malicious-prosecution claim based on

assertion that complainant had "persuaded the city prosecutor to file criminal charges . . .

and force the case to trial" failed because plaintiff had not produced evidence that

prosecutor "was controlled by [the complainant] and failed to exercise independent

discretion").

Accordingly, the Court will dismiss Jenkins's malicious-prosecution claim against

Cuscaden and Jovanovich.[21]

**C.      The constitutional claim against Bush must be dismissed.**

Bush has moved to dismiss (or, in the alternative, for summary judgment on)

Jenkins's constitutional claim.  Bush argues that Jenkins's factual allegations against him

are wholly speculative and, in any event, are demonstrably false.  (County Def. Mem. at 13-

17.)  The Court does not reach these arguments, because there is a more fundamental

problem with Jenkins's constitutional claim against Bush.

Jenkins has nowhere specified in the TAC (or in any prior version of his Complaint)

whether he has sued Bush in his individual or official capacity.  As the Eighth Circuit has

made abundantly clear:

--------

[21] This claim also is asserted against three "John Doe" defendants, but there are no facts
pleaded in the TAC that would suggest any involvement by the John Does in Jenkins's "malicious"
prosecution.  Indeed, the John Does are only mentioned once in the TAC, when Jenkins recites the
parties against whom the lawsuit is brought.  (See TAC ¶ 7.)  Accordingly, the Court will dismiss the
malicious-prosecution claim against the John Does, as well.

25

> Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both. . . . This court has held that, in order to sue a public official in his or her individual capacity, *a plaintiff must expressly and unambiguously state so in the pleadings*, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.   Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants.   *Absent such an express statement, the suit is construed as being against the defendants in their official capacity.*

Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (emphases added)

(citations omitted); accord, e.g., Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161

F.3d 1178, 1182 (8th Cir. 1998); Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

This has been settled law in the Eighth Circuit for nearly twenty years.  See Nix v. Norman,

879 F.2d 429, 431 (8th Cir. 1989).

Jenkins clearly understands the need to plead capacity with specificity – he has

explicitly alleged that Cuscaden and Jovanovich are sued in their official and individual

capacities, while he has sued Blanch and Knutson in their individual capacities only.  The

TAC contains no similar averment with respect to Bush; it is noticeably silent on this issue.

Accordingly, the Court must assume that Bush has been sued in his official capacity only.

This mandatory assumption, however, is fatal to Jenkins's claim.  An official

capacity suit is simply "another way of pleading an action directly against the public entity

itself."  Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994).  In other words, Bush has sued

the County twice:  once by naming it as a defendant in the constitutional claim, and once

again by naming Bush, in his official capacity, as a defendant in that claim.  The Court may

dismiss Bush as a defendant under these circumstances.  Artis, 161 F.3d at 1182.

The Court does not end its analysis there, however, because also absent from the TAC are any facts indicating, or even suggesting, that Bush's allegedly unlawful actions were intended to "implement or execute an unconstitutional policy or custom."  Johnson, 172 F.3d at 535-36.[22]  In the absence of factual allegations indicating that such a policy or custom exists, the claim fails.  Id.; see also D.E.S. v. Kohrs, 187 F.3d 641 (Table), 1999 WL 506121, at *2 (8th Cir. 1999) (unpublished) (affirming dismissal of official-capacity claims where plaintiff failed to plead unconstitutional policy or custom).

Accordingly, the Court will dismiss the constitutional claim against Bush.

## III.   The dismissals due to pleading defects will be with prejudice.

As the foregoing makes clear, several of Jenkins's claims fail as a matter of law (e.g., the assault and battery claims), while others fail because they have been improperly pleaded (e.g., the constitutional claim against Bush).  As to the claims with mere pleading defects, an important question remains:  should the dismissal of those claims be with or without prejudice?

In answering that question, the Court notes that Jenkins has had four bites at the

_____

[22] Jenkins does allege that "Defendants acted under color . . . of a . . . policy [and] custom (there was a pattern and practice of condoning sexual misconduct in the jail, and/or a policy of not disciplining jailers for such misconduct) . . . ."  (TAC ¶ 43.)  This bald allegation, which is devoid of any supporting factual averments, is insufficient under Twombly.  See 127 S. Ct. at 1964-65 (plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions'"); see also Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *2 (D. Minn. Feb. 1, 2007) (Kyle, J.) (when ruling on motion to dismiss, "the Court need not consider conclusory allegations or blindly accept the legal conclusions drawn by the plaintiff").

proverbial apple:  an original Complaint, followed by three subsequent amendments.  Each

of those amendments came only after Defendants moved to dismiss and pointed out the

defects in Jenkins's pleadings.  Despite three tries, however, Jenkins has failed to correct

those pleading defects.  Moreover, Jenkins is not proceeding *pro se* in this case; he is

represented by an experienced civil-rights litigator who has filed dozens of Section 1983

cases in this Court.  Finally, the undersigned notes that Jenkins's counsel was recently

admonished by District Judge Joan N. Ericksen of this Court in a case involving claims

similar to those at issue here.  There, the constitutional claims were pleaded in a confusing,

"kitchen-sink" approach, much like the claims here.  Generously describing the plaintiff's

claims as "less than clear," Judge Ericksen warned that "[l]itigants, particularly those

represented by counsel, have a duty to clearly inform the court of the bases for their

requested relief."  Stepnes v. Tennessen, Civ. No. 04-68, 2006 WL 2375645, at *4 n.10

(D. Minn. Aug. 16, 2006).  Jenkins's counsel clearly has failed to heed that warning in this

case, which was filed three short weeks after Stepnes was decided.

For all of these reasons, the Court concludes that the defectively pleaded claims

should be dismissed with prejudice.  See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962)

(court need not grant party leave to amend where there exists a "repeated failure to cure

[the pleading] deficiencies by amendments previously allowed"); Baptist Health v. Smith,

477 F.3d 540, 544 (8th Cir. 2007).  In the Court's opinion, it is time for this lawsuit to

move forward towards its conclusion, rather than giving Jenkins yet another chance to

amend his Complaint and, most likely, inviting another round of motions to dismiss.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** as follows:

1.       The State Defendants' Motion to Dismiss (Doc. No. 40) is **GRANTED**.  To

the extent that Count I of the Third Amended Complaint is asserted against

the State Defendants, that claim is **DISMISSED WITH PREJUDICE**.  To

the extent that Count IV of the Third Amended Complaint is asserted against

the State Defendants, the Court declines to exercise supplemental

jurisdiction over that claim and it is **DISMISSED WITHOUT**

**PREJUDICE**.[23]

2.       The County Defendants' Motion for Partial Dismissal and/or Partial

Summary Judgment (Doc. No. 91) is **GRANTED**.  Counts II and III of the

Third Amended Complaint are **DISMISSED WITH PREJUDICE**.  To the

extent that Count IV is alleged against Jovanovich, Cuscaden, and the John

Doe Defendants, that claim also is **DISMISSED WITH PREJUDICE**.

For the sake of clarity, the only claim remaining in this case is the constitutional

claim (Count I) against the County Defendants.

Dated: August  3 , 2007                                    s/Richard H. Kyle
                                                                      RICHARD H. KYLE
                                                                      United States District Judge

---

[23] See 28 U.S.C. § 1367(d).