# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Philander Jenkins,

                          Plaintiff,

                                            Civ. No. 06-3625 (RHK/AJB)
                                            **MEMORANDUM OPINION AND ORDER**

v.

County of Hennepin, Minnesota, *et al.,*

                          Defendants.

---

Jill Clark, Jill Clark, P.A., Golden Valley, Minnesota, for Plaintiff.

Toni A. Beitz, Hennepin County Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

In this Section-1983 action, Plaintiff Philander Jenkins alleges that he was sexually assaulted while an inmate at the Hennepin County Adult Detention Center (the "ADC"). He commenced this action in 2006, alleging various violations of his constitutional rights. In a prior opinion, see Jenkins v. County of Hennepin, Minn., Civ. No. 06-3625, 2007 WL 2287840 (D. Minn. Aug. 3, 2007), the Court dismissed the majority of this case, leaving only certain claims pending against Hennepin County (the "County") and the two detention deputies (Trent Jovanovich and Michael Cuscaden) who allegedly perpetrated the assault. These Defendants now move for summary judgment on certain of Jenkins's claims. For the reasons set forth below, the Court will grant their Motion.

**BACKGROUND**

The background in this case is set forth in extensive detail in the Court's prior opinion and will not be repeated here. In a nutshell, Jenkins alleges that on October 4, 2003, he had a verbal altercation with Jovanovich and Cuscaden in his cell at the ADC, after which he was sexually assaulted by them.[1] He later commenced the instant action against the County, Jovanovich, Cuscaden, and several others in connection with the alleged assault and the subsequent investigation.

Jenkins has amended his Complaint three times; in its prior opinion, the Court dismissed most of the Third Amended Complaint, leaving standing only his constitutional claim (Count I) against the County, Jovanovich, and Cuscaden.[2] Although that claim is confusingly pleaded, it makes the following assertions against these Defendants: violation of substantive due process; excessive force; "due process/equal protection/first amendment chilling and/or retaliation"; and "due process – lack of neutral investigation." (See Third Am. Compl. ¶ 42.) In the instant Motion, Defendants seek dismissal of each

---

[1] It is unclear precisely what charges led to Jenkins being housed at the ADC, although the Court notes that he has an extensive criminal record. See, e.g., State v. Jenkins, No. A05-68, 2005 WL 1950241 (Minn. Ct. App. Aug. 16, 2005) (charges of burglary, first- and second-degree assault, unlawful possession of a firearm, and solicitation of a minor to commit a crime); State v. Jenkins, No. A04-1684, 2005 WL 1669020 (Minn. Ct. App. July 19, 2005) (aggravated robbery, assault, and unlawful possession of a firearm). After this case was commenced, Jenkins was convicted of murdering two individuals; he was sentenced to two consecutive life sentences without the possibility of parole for those crimes. See http://www.startribune.com/local/17029416.html (last visited September 30, 2009); http://www.startribune.com/local/18064049.html (last visited September 30, 2009).

[2] Jovanovich and Cuscaden are sued in both their individual and official capacities.

of these claims except the substantive-due-process and excessive-force claims against Jovanovich and Cuscaden in their individual capacities. In response, Jenkins has agreed to the dismissal of most of the claims subject to the Motion.[3] All that remains for resolution is the County's request for dismissal of the Monell substantive-due-process claim.[4]

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The

---

[3] Specifically, he has agreed to the dismissal of his equal-protection, First-Amendment, and (non-substantive) due-process claims against Cuscaden and Jovanovich; his equal-protection and First-Amendment claims against the County; and certain of his due-process claims against the County. He has also agreed to the dismissal of several John-Doe Defendants named in the Third Amended Complaint. (See Mem. in Opp'n at 1-2.)

[4] Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978). The Monell claim is alleged against the County and Jovanovich and Cuscaden in their official capacities, but "[a]n official capacity suit is simply 'another way of pleading an action directly against the public entity itself.'" Jenkins, 2007 WL 2287840, at *12 (quoting Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994)).

3

nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

Section 1983 provides that "[e]very person who . . . subjects, or causes to be subject, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law." In Monell, the Supreme Court held that a municipality is a "person" that can be sued under Section 1983. 436 U.S. at 690. "At the same time, the Court concluded that a municipality may not be found liable 'unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 389 (8th Cir. 2007) (*en banc*) (quoting Monell, 436 U.S. at 691).[5]

In this case, Jenkins's claim is not predicated on any unconstitutional policy implemented by the County. Rather, he bases his claim on the County's *lack* of a policy. Specifically, he asserts that the County was deliberately indifferent to the sexual assault of inmates at the ADC by not implementing a policy specifically designed to prevent rapes and handle rape complaints by inmates. (See Mem. in Opp'n at 15.) While

---

[5] Monell liability may also attach where a constitutional tort results from a practice so "permanent and well-settled" that it constitutes a municipality's "custom." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 659 (8th Cir. 2007). Here, Jenkins acknowledges that he "is not making a 'custom' argument under Monell." (Mem. in Opp'n at 2.)

4

acknowledging that the County has implemented policies designed to prohibit assaults and the excessive use of force by prison guards, he claims that those policies did not "deal[] with the core issues" addressed in the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.* (Id.) The stated goal of that statute was the "establish[ment of] a zero-tolerance standard for the incidence of prison rape" and an "increase [in] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." (See id. at 13-14 (quoting 42 U.S.C. § 15602(1)-(9)).) In other words, Jenkins claims that, notwithstanding the County's policies regarding the use of force, he was sexually assaulted because the ADC had no established *rape* policy, and as a result his due-process rights were violated. (See id. at 15-16.)

This claim fails to pass muster. It is true that the lack of a policy can be actionable under Monell. See, e.g., Wood v. City of Lancaster, Civ. No. 06-3033, 2009 WL 80306, at *20 (E.D. Pa. Jan. 13, 2009) ("In order to establish a Monell claim, a plaintiff must show that a policy, *or lack thereof*, was the proximate cause of plaintiff's alleged constitutional injury.") (emphasis added); Turner v. Viviano, No. 04-CV-70509, 2005 WL 1678895, at *3 (E.D. Mich. July 15, 2005) (same); Rubeck v. Sheriff of Wabash County, 824 F. Supp. 1291, 1301-02 (N.D. Ind. 1993) (same). Were it otherwise, policymakers would have "a perverse incentive . . . to adopt a policy of not having defined or written policies, the effect of which would be to immunize the municipalities from liability for unconstitutional actions by their agents." Id. at 1301. But the failure to adopt a policy is actionable under Monell only where it evidences a conscious choice by

policymakers. See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989); Szabla, 486 F.3d at 390. This is especially true where, as here, a municipality has developed a policy, constitutional on its face, that applies to the conduct at issue, "but it is asserted that [the] municipality should have done more to prevent constitutional violations by its employees." Id. (noting in such circumstances that "a plaintiff must . . . demonstrat[e] that the inadequacies [of the existing policy] were a product of deliberate or conscious choice by policymakers").

In order to show that the lack of a rape policy was a conscious choice by the County, Jenkins must show that its failure to adopt such a policy "was the product of deliberate indifference to the constitutional rights" of inmates. Szabla, 486 F.3d at 390; accord, e.g., Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir. 2008); Ambrose v. Young, 474 F.3d 1070, 1079-80 (8th Cir. 2007). Deliberate indifference "is a difficult standard to meet." Spencer v. Knapehide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999); accord, e.g., Moyle v. Anderson, 571 F.3d 814, 818 (8th Cir. 2009) ("high burden"); Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998). To do so, Jenkins must proffer evidence indicating that the need for a rape policy was "obvious" and that the inadequacies of the ADC's already existing use-of-force policies were "likely to result in the violation of constitutional rights." Ambrose, 474 F.3d at 1079-80; accord, e.g., Moyle, 571 F.3d at 818-19 ("The standard for deliberate indifference is objective; a governmental entity is liable if it has maintained 'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights,'

6

that the policymakers can be said to have been deliberately indifferent.") (citation omitted).

Jenkins has failed to satisfy his burden here. He has proffered no evidence indicating that the County's policymakers were aware of a history of rapes at the ADC, such that the need for a rape policy was "obvious." Nor has he proffered any evidence suggesting that detention officers (including Jovanovich and Cuscaden) had a history of violating the ADC's policies restricting the use of force against inmates. In fact, he has proffered very little in the way of evidence at all, relying on nothing more than his statement to authorities following the alleged rape and the testimony of a detention sergeant who was generally aware of the Prison Rape Elimination Act. (See Mem. in Opp'n at 2-5, 15-16.) Without any evidence that County policymakers knew, or should have known, about rape problems at the ADC, Jenkins's claim simply cannot stand.

As noted above, to be deliberately indifferent a policymaker must have made a conscious "choice to follow a course of action . . . from among various alternatives." Harris, 489 U.S. at 389. Hence, a plaintiff must produce some evidence establishing that the policymaker was aware (or should have been aware) of a problem, but chose not to address it. Otherwise, it would be impossible for the Court (or a jury) to conclude that the policymaker's actions were *deliberate*.[6]

---

[6] The evidence a plaintiff must proffer need not establish the policymaker's *actual* knowledge of a substantial risk to inmates. It is sufficient to proffer circumstantial evidence showing that a substantial risk was "so obvious" that the policymaker was required to act. See Harris, 489 U.S. at 390. Jenkins appears to suggest that the Prison Rape Elimination Act created such "obviousness" – in other words, the statute put the ADC on notice that prison rape was a

Szabla is instructive. There, the plaintiff was injured when he was bitten by a Brooklyn Park police dog. He asserted a Monell claim against the city, based on its "failure to have a policy giving guidance on the use of canines." 486 F.3d at 392 (emphasis deleted) (internal quotation marks omitted). The evidence established, however, that the city did indeed have policies regulating the use of police dogs, but those policies did not "give *detailed* guidance that might have averted" the bite suffered by the plaintiff. Id. (emphasis added). The district court dismissed the Monell claim, and the Eighth Circuit affirmed.[7] The appellate court held that because the city had policies in place regarding the use of police dogs, the plaintiff could only prevail if he established that the failure to adopt a more stringent policy exhibited deliberate indifference. Id. And because the plaintiff had not proffered evidence showing "that Brooklyn Park had a history of police officers unreasonably using canines," he failed to show that the city's policymakers had made a conscious choice not to adopt stricter policies regarding the use of police dogs. Id. at 392-93; see also Moyle, 571 F.3d at 819 (affirming dismissal of Monell claim where appellants did not offer "any evidence that the county had notice of an alleged inadequacy in the booking policy or that the policy's alleged inadequacy was

---

problem requiring the adoption of a rape policy. (See Mem. in Opp'n at 15-16.) Yet, he expressly states that his "argument is *not* that the Rape Elimination Act mandated policies." (Id. at 15 (emphasis in original).) And the Court does not believe that the mere passage of the Act rendered it "so obvious" that prison rape was a problem that the ADC was obliged to adopt a rape policy.

[7] A three-judge panel initially reversed, but upon rehearing *en banc*, the full court affirmed.

so patently obvious that the county should have known that a constitutional violation was inevitable"); Russell v. Hennepin County, 420 F.3d 841, 848 (8th Cir. 2005) (absent evidence that County was aware of problems or inadequacy of policy to address them, Monell claim properly dismissed).

The cases Jenkins cites in support of his claim are distinguishable, because the plaintiffs there proffered evidence showing that the policymakers were aware of problems but failed to take steps to address them. In Oviatt v. Pearce, 954 F.2d 1470, 1473, 1477 (9th Cir. 1992), for example, the plaintiff produced evidence that the defendant sheriff "was aware that 'from time to time' individuals were not arraigned because of mistakes made by the court or jail," but he "took no steps to alleviate" that problem. In Rivas v. Freeman, 940 F.2d 1491, 1495-96 (11th Cir. 1991), the plaintiff presented evidence that the defendant sheriff "knew of prior instances of mistaken identity, but allowed deputies to detain individuals even where discrepancies existed." And in Leach v. Shelby County Sheriff, 891 F.2d 1241, 1243 (6th Cir. 1989), the plaintiff proffered evidence that the defendant had a history of mistreating paraplegic or physically infirm inmates. See also Cox v. Dist. of Columbia, 821 F. Supp. 1, 6 (D.D.C. 1993) (evidence showing hundreds of excessive-force and harassment complaints filed over a ten-year period); Timberlake v. Benton, 786 F. Supp. 676, 696 (M.D. Tenn. 1992) (evidence showed that non-custodial strip searches had been conducted "on numerous occasions"). There is no similar evidence before the Court here.

At bottom, Jenkins's claim is devoid of evidentiary support and boils down to the

9

bare assertion that the County violated his constitutional rights because it lacked a rape policy. That is simply not enough under Monell. See Boyd v. Benton County, 374 F.3d 773, 784 (9th Cir. 2004) (noting that a plaintiff "cannot survive summary judgment on [a] Monell claim by simply relying on the lack of a written policy").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. No. 134) is **GRANTED**, and the following claims in the Third Amended Complaint are **DISMISSED WITH PREJUDICE**:

1. All remaining claims asserted against John Does 3-5;

2. All remaining claims asserted against the County;

3. Count I, insofar as it is alleged against Jovanovich and Cuscaden in their official capacities; and

4. Count I, insofar as it alleges claims for "due process/equal protection/ first amendment chilling and/or retaliation" and "due process – lack of neutral investigation" (Third Am. Compl. ¶ 42.c, 42.d) and is alleged against Jovanovich and Cuscaden in their individual capacities.

For the sake of clarity, the only claims left for trial are that portion of Count I, alleged against Jovanovich and Cuscaden in their individual capacities, based on substantive due process and excessive force (Third Am. Compl. ¶¶ 42.a, 42.b).

Dated: September 30, 2009         s/Richard H. Kyle
                                  RICHARD H. KYLE
                                  United States District Judge